**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0001760**
**27-FEB-2017**
**10:31 AM**

NO. CAAP-13-0001760

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HIWALANI P S HOLDINGS, LLC and ROBERT N. FABRIQUE,
Plaintiffs-Appellees,
v.
WELLS FARGO BANK, N.A., AS TRUSTEE FOR OPTION ONE
MORTGAGE LOAN TRUST 2007-6 ASSET BACKED CERTIFICATES,
SERIES 2007-6, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-1847)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Reifurth and Ginoza, JJ.)

Defendant-Appellant Wells Fargo Bank, N.A., As Trustee for Option One Mortgage Loan Trust 2007-6 Asset-Backed Certificates, Series 2007-6 ("Wells Fargo") appeals from the following orders and judgment entered by the Circuit Court of the First Circuit ("Circuit Court")[1/]: (1) Order Granting Plaintiffs Hiwalani P S Holdings, LLC and Robert N. Fabrique's Motion for Partial Summary [Judgment], Filed September 07, 2012, filed on December 21, 2012 ("Order Granting Partial Summary Judgment"); (2) Order Granting in Part and Denying in Part Plaintiff's Motion for Prejudgment Interest, Filed January 3, 2013, filed on March 1, 2013 ("Order for Prejudgment Interest"); (3) Order Awarding Plaintiffs Attorneys' Fees and Costs, filed March 1, 2013 ("Order for Fees"); and (4) Final Judgment, filed June 3,

---

[1/]    The Honorable Karen T. Nakasone presided.

2013. We affirm in part, vacate in part, and remand for further proceedings consistent with this memorandum opinion.

I.    BACKGROUND

K. Puanani Holt-Kay ("Borrower") purchased property located in Pukalani, Hawai'i ("Property") and executed a Note and Mortgage in favor of Option One Mortgage Corporation in the principal amount of $558,000 on April 18, 2007.  Wells Fargo was assigned the Mortgage effective on February 4, 2009 and recorded the assignment with the State of Hawai'i Bureau of Conveyances ("Bureau") on March 20, 2009.  The Mortgage provides that

> 21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is *not paid when due*, or if *Borrower should be in default* under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, *all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender* without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. *In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.* . . .
>
>         . . . .
>
> 27. Modification. This Security Instrument may be *modified or amended only by an agreement in writing signed by Borrower and Lender.*

(Emphasis added).

Borrower fell behind on payments and into default. Wells Fargo initiated nonjudicial foreclosure proceedings by publishing a notice in a newspaper of general circulation stating that it intended to foreclose on the Property via auction on June 5, 2009.  On April 20, 2009, Wells Fargo recorded a Notice of Mortgagee's Intention to Foreclose Under Power of Sale ("Notice") with the Bureau, which stated that Wells Fargo intended to foreclose on the Property via auction on June 5, 2009, and included the time, location, and terms of the sale. *See* Haw. Rev. Stat. § 667-5 (Supp. 2008).[2]

---

[2]    Hawaii Revised Statutes ("HRS") section 667-5 states, in pertinent part:

> (a)    When a power of sale is contained in a mortgage, and where the mortgagee [or] the mortgagee's

2

In its opening brief, Wells Fargo explains that while its servicing agents were attempting to work out a loan modification with Borrower, its attorneys and other agents were proceeding with the foreclosure process. Borrower first submitted a request for loan modification and supporting documents in a letter to American Home Mortgage Servicing, Inc., Mitigation Department, Wells Fargo's servicing agent ("Servicer"), dated May 16, 2009. On June 1, 2009, Servicer spoke with Borrower regarding a potential loan modification, and Borrower informed Servicer of additional income which, she claimed, would allow her to get back on schedule. Borrower faxed verification of the income to Servicer on June 3, 2009, and on June 4, 2009, Servicer placed the foreclosure of the Property on hold in its internal tracking system.

---

> successor in interest . . . desires to foreclose under power of sale upon breach of a condition of the mortgage, the mortgagee, [or] successor . . . shall be represented by an attorney who is licensed to practice law in the State and is physically located in the State. The attorney shall:
>
> > (1) Give notice of the mortgagee's [or] successor's . . . intention to foreclose the mortgage and of the sale of the mortgaged property, by publication of the notice . . . in a newspaper having a general circulation in the county in which the mortgaged property lies; and
> >
> > (2) Give any notices and do all acts as are authorized or required by the power contained in the mortgage.
>
> . . . .
>
> > (d) Any sale, of which notice has been given as aforesaid, may be postponed from time to time by public announcement made by the mortgagee or by some person acting on the mortgagee's behalf. Upon request made by any person who is entitled to notice pursuant to section 667-5.5 or 667-6, or this section, the mortgagee or person acting on the mortgagee's behalf shall provide the date and time of a postponed auction, or if the auction is canceled, information that the auction was canceled. The mortgagee within thirty days after selling the property in pursuance of the power, shall file a copy of the notice of sale and the mortgagee's affidavit, setting forth the mortgagee's acts in the premises fully and particularly, in the bureau of conveyances.

Haw. Rev. Stat. §667-5(a) & (d).

Irrespective of the internal hold placed on the foreclosure process, on June 5, 2009, Wells Fargo's attorneys auctioned off the Property in accordance with the Notice. Robert N. Fabrique was the high bidder. Thereafter, Fabrique tendered deposits in the total amount of $30,000 to another of Wells Fargo's agents, FEI LLC ("FEI"). The deposit was accompanied by an explanation that the owner would hold the Property in the name of Hiwalani P S Holdings, LLC ("Holdings"). In return, FEI tendered Fabrique a receipt ("Receipt") for the deposit dated June 5, 2009, which identified Fabrique as "the successful bidder at the foreclosure sale of the property." The Receipt was signed by FEI and identified FEI as the "Trustee's Agent." In addition, Fabrique provided Vesting Instructions to FEI on the form provided by FEI. Together, the Receipt and the Vesting Instructions contained the deposit amount, total purchase price, purchaser name, seller name, date of sale, form of tenancy, and identified the property that the deposits should go towards. On June 8, 2009, Wells Fargo informed Holdings that Wells Fargo intended to cancel the sale.

Holdings and Fabrique (collectively "Hiwalani") filed a complaint for breach of contract against Wells Fargo. Wells Fargo moved for summary judgment, and the motion was granted. Hiwalani appealed and this court in an unpublished memorandum opinion remanded the case to the Circuit Court, stating that "[w]hether there was a pre-auction agreement that cured Borrower's default and caused the subsequent auction to be invalid is a genuine issue of material fact that would have the effect of establishing or refuting whether the requirement was met that a borrower be in default before a foreclosure sale takes place." *Hiwalani PS Holdings, LLC v. Wells Fargo Bank*, No. CAAP-10-0000148, 2012 WL 593098, at *4 (Haw. App. Feb 23, 2012) (hereinafter "*Hiwalani I*").

On remand, Wells Fargo moved to amend its answer to include a statute of frauds defense and Hiwalani filed a motion for partial summary judgment on the issue of liability. The Circuit Court denied Wells Fargo's motion to amend on the basis of futility and issued its Order Granting Partial Summary

4

Judgment, which also awarded $118,000 in damages to Hiwalani. The Circuit Court then issued its Order for Fees. Wells Fargo appeals.

## II. POINTS OF ERROR

On appeal, Wells Fargo contends that the Circuit Court erred (1) in ruling that a valid contract was formed because the auction was void, (2) in rejecting Wells Fargo's argument against formation of a contract based upon mistake, (3) in rejecting Wells Fargo's motion to amend its answer on the basis of futility, (4) by considering Hiwalani's damage claim that was first submitted in Plaintiff's reply memorandum, (5) in finding that Hiwalani had proved it was entitled to damages in excess of the return of its deposit plus interest, and (6) in awarding Hiwalani attorneys' fees, costs, and prejudgment interest because Hiwalani was not the prevailing party.

## III. STANDARDS OF REVIEW

### Summary Judgment

"An award of summary judgment is reviewed de novo under the same standard applied by the circuit court." *French v. Hawai'i Pizza Hut, Inc.*, 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004) (citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22 (1992)) . . . . The standard for granting a motion for summary judgment is well settled:

[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Bremer v. Weeks*, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000)[.]

*Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc.*, 114 Hawai'i 37, 46, 155 P.3d 1138, 1147 (2007) (emphasis in original omitted).

*Motion to Amend Answer*

"[T]he grant or denial of leave to amend [an answer] under Rule 15(a)[, Hawai'i Rules of Civil Procedure ("HRCP"),]is within the discretion of the trial court." *Associated Eng'rs & Contractors, Inc. v. State*, 58 Haw. 187, 218, 567 P.2d 397, 417 (1977) (citing *Bishop Trust Co. v. Kamokila Dev. Corp.*, 57 Haw. 330, 555 P.2d 1193 (1976)).

*Attorneys' Fees and Costs*

"The trial court's rulings concerning the award of attorneys' fees and costs are generally reviewed under the abuse of discretion standard." *Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co. Ltd.*, 100 Hawai'i 97, 120, 58 P.3d 608, 631 (2002).

*Interest (Awards of) - Granting/Denying Prejudgment Interest*

> Prejudgment interest, where appropriate, is awardable under [Hawaii Revised Statutes ("HRS") section] 636-16 [(1993)] in the discretion of the court. Generally, to constitute an abuse of discretion it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Schmidt v. Bd. of Dirs. of the Ass'n of Apartment Owners of the Marco Polo Apartments*, 73 Haw. 526, 533, 836 P.2d 479, 483 (1992) (citations omitted).

IV.  DISCUSSION

A.  Wells Fargo's motion to amend

Wells Fargo argues that the Circuit Court abused its discretion when it denied Wells Fargo's motion to amend its answer to include a statute of frauds defense. HRCP Rule 15 provides that a pleading may be amended once and within 20 days of filing as a matter of course. After 20 days have passed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Haw. R. Civ. P. 15(a)(2). The trial court based its ruling on the grounds that the amendment

would be futile. In order for us to determine if the Circuit Court abused its discretion, we first consider if an amendment to raise a statute of frauds defense would have been futile.

Hawai'i's statute of frauds provides, in pertinent part:

> No action shall be brought and maintained . . . [u]pon any contract for the sale of lands . . . unless the . . . contract . . . upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by the party in writing lawfully authorized.

Haw. Rev. Stat. § 656-1 (1993). Between the Notice, the Receipt, and the Vesting Instructions, all necessary terms of the contract and the signature of the party against whom enforcement is sought are present. *See* Haw. Rev. Stat. § 656-1. "To satisfy the requirements of the Statute [of frauds], the writing need merely state 'with reasonable certainty the essential terms of the unperformed promises in the contract.'" *Burgess v. Arita*, 5 Haw. App. 581, 588, 704 P.2d 930, 936 (1985) (quoting Restatement (Second) of Contracts § 131 (1981)). Accordingly, a statute of frauds defense is futile, and allowing an amendment to Wells Fargo's answer is equally futile. Wells Fargo fails to establish how the Circuit Court's denial of the motion to amend violated the court's duty to allow amendment when justice so requires. Therefore, the Circuit Court did not abuse its discretion in denying Wells Fargo's motion to amend.

B.    Hiwalani's motion for partial summary judgment

Wells Fargo contends that the foreclosure sale was not conducted in compliance with either the mortgage's power of sale clause or HRS section 667-5 because its internal system reflected a hold on the foreclosure sale, and that such a hold reflected that it no longer desired to foreclose upon the Property. Consequently, Wells Fargo argues, no valid contract could have been formed because it did not intend to execute the option in the mortgage. This argument is without merit.

> The existence of mutual assent or intent to accept is determined by an objective standard. A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an objective intention to agree. All reasonable meanings will be imputed as representative of a party's corresponding objective

7

> intention. Unexpressed intentions are nugatory when the
> problem is to ascertain the legal relations, if any, between
> two parties.

*United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc.*, 113 Hawaiʻi 127, 141, 149 P.3d 495, 509 (2006) (quoting *Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 470-71, 540 P.2d 978, 982 (1975)).

From an outsider's perspective, Wells Fargo intended to sell the Property. Among other things, it hired agents to file the Notice with the Bureau; advertise the prospective sale of the Property in the newspaper; conduct the sale of the Property in accordance with the specified date, time, and location; accept Holdings' $30,000 deposit; provide acknowledgment of the sale to Fabrique as the "successful bidder"; and take instructions to escrow from Fabrique regarding vesting of title to the Property. Furthermore, the Notice included explicit terms of the sale, including "[n]o upset price," "[a]t the close of the auction, Purchaser shall pay at least 10% of the highest successful bid price . . . in cash," and that "[t]he property shall be conveyed . . . within 30 days . . . and upon performance by Purchaser, no later than 21 days after the auction, of the following obligations[.]" The Notice further stated that by bidding a potential purchaser indicates an agreement to be bound, and provided penalties for subsequent nonperformance of the Purchaser, including "[i]n the event the sale does not close because of any delay in performance by the Purchaser . . ., the 10% down payment may be retained by Mortgagee as liquidation damage[s]." In sum, Wells Fargo followed the requirements of HRS section 667-5 and the Notice in conducting the sale.

While some of Wells Fargo's agents had a different intention, it is clear that other Wells Fargo agents intended that Wells Fargo sell the Property pursuant to the Notice. Thus, it was not unreasonable for Holdings, or any prospective purchaser in Holdings' shoes, to conclude that Wells Fargo intended to complete the sale once a prospective buyer fulfilled the terms of the Notice. Further, there was no cure of the default or a loan modification agreement at the time of the sale. As we explained in *Hiwalani I, Lee v. HSBC Bank USA*, 121 Hawaiʻi

8

287, 218 P.3d 775 (2009) is inapposite "[b]ecause the borrowers in *Lee* were no longer in default, they were no longer in breach of the mortgage, and defendant no longer had the power of sale pursuant to the mortgage and HRS § 667-5." *Hiwalani I*, 2012 WL 593098, at *4. Therefore, there was no material fact in dispute as to the legitimacy of the contract for the sale and purchase of the Property.

Alternatively, Wells Fargo argued that the right to cure extends to the time of conveyance, relying upon *Lee*, *Kondaur Capital Corp. v. Matsuyoshi*, 136 Hawai'i 227, 361 P.3d 454 (2015), *Santiago v. Tanaka*, 137 Hawai'i 137, 366 P. 3d 612 (2016), and *Mount v. Apao*, No. SCWC-13-0002977, 2016 WL 6471261 (Haw. Nov. 1, 2016). While these cases addressed conditions that a mortgagee must meet when nonjudicially foreclosing on a mortgage, the cases are distinguishable. In *Santiago*, as in *Lee* discussed above, there was an actual cure of the underlying default before the nonjudicial auction, whereas in this case, Wells Fargo conceded that there was neither a pre- nor post-sale cure of the default. In addition, *Mount* and *Kondaur* are inapposite because unlike in those cases, Wells Fargo does not establish that there was non-compliance with the requirements for a valid nonjudicial foreclosure sale or demonstrate a material factual dispute regarding non-compliance. *See Kondaur*, 136 Hawai'i at 243-44, 361 P.3d at 470-71 (where a self-dealing transaction requires additional consideration of the factors found in *Ulrich v. Security Inv. Co.*, 35 Haw. 158 (Terr. 1902)); *Mount*, 2016 WL 6471261, at *11-12 (stating that prior to a nonjudicial foreclosure, a person entitled to notice should also receive information regarding the amount to cure, if requested). Accordingly, *Lee*, *Kondaur*, *Santiago*, and *Mount* do not preclude enforcement of the contract entered into between Wells Fargo and Holdings.

C.   The Circuit Court's award of damages, attorneys' fees, and prejudgment interest

Wells Fargo argues that the Circuit Court erred in awarding Hiwalani damages based on evidence first submitted in its reply brief. "The movant may file and serve a reply . . . .

9

A reply must respond only to arguments raised in the opposition." Haw. R. Cir. Ct. 7. We have previously examined a similar issue, and ruled that the "[non-moving party] should have been given the opportunity to respond." *Assocs. Fin. Servs. Co. of Hawaii v. Richardson*, 99 Hawai'i 446, 458, 56 P.3d 748, 760 (App. 2002). In *Richardson*, the moving party submitted an additional affidavit introducing new evidence in its reply in support of summary judgment. *Id.* at 458, 56 P.3d at 760. The non-moving party filed an additional declaration in rebuttal that the trial court declined to entertain. *Id.* We held that it was error to allow the moving party to submit new evidence without providing the non-moving party the opportunity to respond. *Id.* at 458-59, 56 P.3d at 760-61.

In its response to Hiwalani's motion for partial summary judgment, Wells Fargo argued that Hiwalani had not provided evidence of damages in its motion, and that its motion was therefore deficient. Since Hiwalani only moved for summary judgment on the issue of liability, the Circuit Court exceeded the scope of Hiwalani's motion when it considered damages. This was an abuse of discretion as it rewarded Hiwalani's violation of the Rules of the Circuit Court of the State of Hawai'i and deprived Wells Fargo of a fair opportunity to respond to Hiwalani's damages claim. Accordingly, we vacate the Circuit Court's award of damages.

Wells Fargo further contends that attorneys' fees and costs were granted in error on the basis that fees and costs may only be awarded to the prevailing party. Indeed, attorneys' fees is a post-judgment issue. HRS section 607-14[3] explicitly caps the fee at twenty-five percent of the judgment, which, as a result of our decision here, has yet to be determined. Therefore, the award of attorneys' fees is premature and we vacate the award.

---

[3]

    [I]n all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; . . . provided that this amount shall not exceed twenty-five per cent of the judgment.

Haw. Rev. Stat. § 607-14 (Supp. 2008).

Finally, Wells Fargo argues that prejudgment interest should not have been awarded because it did not contribute to any undue delay. Without reaching that argument, but for the same reason as explained with regard to attorneys' fees, we vacate the Circuit Court's order granting prejudgment interest.

V.    CONCLUSION

Based on the foregoing, we affirm the Circuit Court's December 21, 2012 Order Granting Partial Summary Judgment with regard to liability, and vacate and remand with regard to damages. We further vacate the March 1, 2013 Order for Prejudgment Interest; the March 1, 2013 Order for Fees; and the June 3, 2013 Final Judgment, to the extent that those orders and judgment award damages, fees, and prejudgment interest. We remand the case to the Circuit Court for proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawai'i, February 27, 2017.

On the briefs:

Paul Alston and
J. Blaine Rogers
(Alston Hunt Floyd & Ing)
for Defendant-Appellant.

Steven K.S. Chung,
Chanelle M.C. Fujimoto, and
Debra M. Peake
(Imanaka Asato, LLLC)
for Plaintiffs-Appellees.

Chief Judge

Associate Judge

Associate Judge

11